FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 03, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MANICHANH I.,[1]<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>Defendant. | No. 4:18-CV-05110-EFS<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are cross-summary-judgment motions, ECF Nos. 12 & 13. Plaintiff Manichanh I. appeals the Administrative Law Judge's (ALJ) denial of benefits.[2] Plaintiff contends the ALJ: (1) erred by not properly assessing the vocational and educational elements, including Plaintiff's literacy; (2) failed to meet her step five burden; (3) improperly assessed Plaintiff's medical opinions; and (4) improperly discredited Plaintiff's subjective complaints.[3] The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.
[2] ECF No. 1.
[3] ECF No. 12 at 2.

ORDER ON CROSS SUMMARY JUDGMENT MOTIONS - 1

decision. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment in part and denies Defendant's Motion for Summary Judgment in part, and remands for further development of the record and findings.

## I. Standard of Review

On review, the Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.[4] "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence."[6]

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.[7] That said, the Court may not substitute its judgment for that of the Commissioner. If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision.[8] Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless."[9] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[4] *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987).
[5] *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).
[6] *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
[7] *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).
[8] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
[9] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

nondisability determination,"[10] and where the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."[11]

## II. <u>Facts, Procedural History, and the ALJ's Findings</u>[12]

Plaintiff Manichanh I. is 55 years old and lives in Tri Cities, WA. Plaintiff filed an application for social security disability benefits and supplemental security income on November 27, 2013, alleging a disability onset date of June 30, 2013.[13] Plaintiff's claim was denied initially and upon reconsideration.[14] Plaintiff requested a hearing before an ALJ on August 8, 2014, which was held on November 9, 2016.[15] On August 16, 2017, the ALJ, Virginia M. Robinson, rendered a decision denying Plaintiff's claim.[16]

At step one,[17] the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2013, the alleged onset date.[18]

At step two, the ALJ found Plaintiff had the following severe medical impairments: degenerative disc disease, carpal tunnel syndrome (CTS) of bilateral wrists, depression, and anxiety.[19]

---

[10] *Id.* at 1115 (quotations and citation omitted).
[11] *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted).
[12] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.
[13] AR 15.
[14] *Id.*
[15] *Id.*
[16] AR 27.
[17] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 16–17, and the Court presumes the parties are well acquainted with that standard process. As such, the Court does not restate the five-step process in this order.
[18] AR 18
[19] *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment that met the severity of a listed impairment.[20]

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work.[21] She found that Plaintiff can occasionally lift and/or carry 20 pounds and can frequently lift and/or carry 10 pounds.[22] She can also stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, and can sit with normal breaks for the same.[23] She can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds.[24] She may frequently handle, balance, stoop, kneel, and crouch, and occasionally finger and crawl.[25] The ALJ noted that she should avoid concentrated exposure to extreme cold, vibration, pulmonary irritants, and hazards such as dangerous machinery and unprotected heights.[26] The ALJ found the Plaintiff can perform simple routine tasks in a routine work environment with simple work related decisions.[27]

In reaching these conclusions, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[28] However, the ALJ found Plaintiff's statements regarding the intensity,

---

[20] *Id.*
[21] AR 20
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] AR 20.
[27] *Id.*
[28] *Id.*

persistence, and limiting effects of those symptoms were not entirely consistent with the evidence presented in the record.[29]

When determining Plaintiff's RFC, the ALJ gave some weight to Dr. Alnoor Virji, who provided a Disability Determination Explanation.[30] The ALJ assigned some but limited weight to the opinions of the DSHS physicians and the opinions of Dr. Cheryl Hipolito.[31] The ALJ assigned little weight to the Disability Determination Services determination that the claimant did not have a severe mental impairment.[32] Finally, the ALJ assigned very limited weight to the opinion of Valene Rives, LMHCA, and limited weight to the opinion of Plaintiff's friend So Phongsavath.[33]

At step five, the ALJ found Plaintiff was not able to perform any past relevant work, including her job as a commercial institutional cleaner.[34] However, given her age, education, work experience, and RFC, the ALJ found there exist significant numbers of jobs that Plaintiff could perform.[35]

The ALJ issued her decision to deny Plaintiff benefits on August 16, 2017.[36] The Appeals Council denied Plaintiff's request for review,[37] making the ALJ's

---

[29] *Id.*
[30] AR 23; 123–33.
[31] AR 24.
[32] *Id.*
[33] *Id.*
[34] AR 25.
[35] AR 26.
[36] AR 27.
[37] AR 1.

decision the Commissioner's final decision for the purposes of judicial review.[38] Plaintiff filed this lawsuit on July 3, 2018.[39]

## III. Applicable Law & Analysis

### A. The ALJ failed to meet her burden of proving Plaintiff's literacy and education level.

Plaintiff argues that the ALJ improperly assessed her vocational and educational elements in her step five analysis.[40] Specifically, Plaintiff challenges the ALJ's findings that Plaintiff (1) had a "limited education," (2) was able to communicate in English, and (3) was literate.[41] The Commissioner argues substantial evidence existed to support the ALJ's findings.[42]

At step five, the ALJ analyzed Plaintiff's RFC under Rule 202.10[43] and found her to be not disabled.[44] Under Rule 202.10, a claimant who (1) is "closely approaching advanced age;"[45] (2) has an education level of "limited or less," but is "at least literate and able to communicate in English"; and (3) has previous work experience that is nonexistent or "unskilled," should be found not disabled.[46] The ALJ explicitly found that Plaintiff had "limited" education,[47] and implicitly found

---

[38] *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.
[39] ECF No. 1.
[40] ECF No. 12 at 4.
[41] *Id.* at 4–7.
[42] ECF No. 13 at 19.
[43] 20 C.F.R. App'x 2 to Subpart P of Part 404, Rule 202.10.
[44] AR 26.
[45] A person "closely approaching advanced age" is generally a claimant between ages 50–54. 20 C.F.R. § 404.1563.
[46] 20 C.F.R. App'x 2 to Subpart P of Part 404, Rule 202.10.
[47] AR 25.

that Plaintiff was "at least literate and able to communicate in English" by applying Rule 202.10.[48]

Under the Social Security regulations, "illiteracy" is defined as "the inability to read or write,"[49] while the "ability to communicate in English" is defined as "the ability to speak, read and understand English."[50] The Ninth Circuit has held that these two requirements "will have inevitable overlap," as "[i]t is reasonable . . . to assume that one who is unable to speak and understand English will also be unable to read and write English."[51] It is the Commissioner's burden to establish that a claimant is literate.[52]

The Social Security Administration (SSA) considers a claimant illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."[53] Further, an illiterate person generally "has had little or no formal schooling."[54] Depending on the claimant's age, impairments, and past work experience, illiteracy may render a claimant disabled.[55]

The Court finds the ALJ failed to fully develop the record with respect to Plaintiff's literacy and education. The ALJ found that Plaintiff "can speak and

---

[48] AR 25; 20 C.F.R. App'x 2 to Subpart P of Part 404, Rule 202.10.
[49] 20 C.F.R. § 404.1564(b)(1).
[50] 20 C.F.R. §§ 404.1564(b)(5); 416.964(b)(5).
[51] *Chavez v. Dep't of Health and Human Services*, 103 F.3d 849, 852 (9th Cir. 1996).
[52] *Silveira v. Apfel*, 204 F.3d 1257, 1261–62 (9th Cir. 2000).
[53] 20 C.F.R. § 404.1564(b)(1).
[54] *Id.* The Court recognizes that Plaintiff attended school up through 10th grade, but her education took place in Laos. AR 89. Further, the SSA considers "a person's ability to communicate in English" when evaluating the claimant's work capacity, "regardless of the amount of education the person may have in another language." 20 C.F.R. §§ 404.1564(b)(5); 416.964(b)(5). Thus, the Court focuses its inquiry on Plaintiff's ability to communicate in English rather than her formal education.
[55] *See generally* 20 C.F.R. App'x 2 to Subpart P of Part 404.

understand English."[56] She based this finding on Plaintiff's completion of English as a Second Language (ESL) classes to Level 3, the fact that she has worked in the United States since her early 20s, and "evidence" in the record.[57] However, the ALJ did not make a specific finding as to Plaintiff's literacy because she did not make any finding regarding Plaintiff's ability to write, despite the fact that an inability to write may render a claimant illiterate. At the hearing, the Plaintiff stated: "I know the alphabet and I'm able to communicate and I can write."[58] However, the ALJ failed to further develop the record as to Plaintiff's ability to write after she made this statement, and included supporting facts in her opinion that are only related to reading.[59] She therefore failed to meet her burden of establishing whether Plaintiff is literate,[60] and the Court cannot affirm her finding that Plaintiff had limited education.[61]

The ALJ's error is not harmless because the ALJ's determination of whether Plaintiff is literate has consequences on the ALJ's ultimate nondisability

---

[56] AR 23.
[57] *Id*. The Court acknowledges that the VE's testimony likely misstated the actual levels of mastery that accompany ESL Level 3. *Compare* Dictionary of Occupational Titles Appendix C: Components of the Definition Trailer (1991), https://occupationalinfo.org/appendxc_1.html#III (defining capabilities of GED Level 3) *with* ESL LEVELS AND PROGRESSIONS (last visited April 25, 2019) https://www.esl-languages.com/en/study-abroad/adults/levels-and-progression/index.htm (defining capabilities of ESL Level 3). The ALJ relied on the VE's testimony when making her explicit findings regarding Plaintiff's ability to speak, read, and understand English. *See* AR 23. On remand, the Court advises the ALJ to further develop the record as to the correct corresponding GED levels to ESL's Level 3.
[58] AR 62.
[59] *See* AR 23.
[60] *Silveria*, 204 F.3d at 1261–62.
[61] AR 25.

1 determination.⁶² And because a claimant's literacy and ability to understand
2 English overlap,⁶³ the Court remands this matter to the ALJ to further develop the
3 record as to both of these issues and conduct a renewed step five/RFC analysis.

4 Because the Court is remanding the matter to the ALJ for a renewed step five
5 analysis—including but not limited to obtaining new VE testimony regarding
6 possible jobs for Plaintiff—the Court declines to address Plaintiff's remaining
7 specific assignment of error regarding the ALJ's meeting of her step five burden.

**B.     The ALJ improperly discredited Plaintiff's subjective complaints.**

Plaintiff argues the ALJ offered improper reasons for discrediting Plaintiff's subjective complaints and testimony regarding the severity of her symptoms.⁶⁴

*i.     Legal Standard*

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."⁶⁵ In the present case, because the ALJ determined Plaintiff's medical

---

⁶² *See Molina*, 674 F.3d at 1115. *See also* 20 C.F.R. App'x 2 to Subpart P of Part 404, Rule 202.10 (applicability and determination of not disabled is based in part on ALJ's finding that the Plaintiff is "at least literate and able to communicate in English").
⁶³ *See Chavez*, 103 F.3d at 852.
⁶⁴ ECF No. 12 at 19–21.
⁶⁵ *Molina*, 674 F.3d at 1112 (internal quotations and citations omitted).

impairment could "reasonably be expected to produce some of the alleged symptoms," she has met step one.[66]

"If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[67] The ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."[68] General findings are insufficient.[69] Courts may not second-guess ALJ findings that are supported by substantial evidence.[70]

In making an adverse credibility determination, the ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition.[71]

*ii.    Analysis*

The Court finds the ALJ failed to satisfy the standards for rejecting Plaintiff's testimony regarding her symptoms because she presented only one

---

[66] AR 20.
[67] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
[68] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and quotations omitted).
[69] *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).
[70] *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).
[71] *Id.* at 958–59.

specific reason supported by substantial evidence, and the ALJ cannot use that reason alone to discredit Plaintiff.

### 1) The ALJ's reasons for discrediting Plaintiff's testimony are improper.

**First,** the ALJ discredited Plaintiff because the ALJ believed her testimony regarding her ability to speak English conflicted with her actual capabilities.[72] As outlined *supra*, the Court finds the ALJ did not make an appropriate determination regarding Plaintiff's literacy and ability to communicate in English. The Court therefore cannot find substantial evidence in the record to support this reason for discrediting Plaintiff's testimony.

**Second,** the ALJ improperly discredited Plaintiff's testimony due to her failure to follow recommended treatment.[73] The ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment or follow a *prescribed* course of treatment" to discredit a claimant's alleged symptoms.[74] However, the ALJ may only discredit a claimant who fails to follow *prescribed* treatment, not treatment that is merely recommended.[75] Further, other Circuits have found that a claimant's refusal to follow recommendations for surgery do not constitute failure to follow prescribed

---

[72] AR 23. To further support this notion, the ALJ provides a statement by Dr. Hipolito saying that "Over the years, [Plaintiff] has been unable to obtain regular employment." *Id.* The ALJ states this is an example of Plaintiff "overstat[ing] her limitations and understat[ing] abilities" because Plaintiff had been employed as a janitor for 22 years. *Id.* Because the ALJ bases her reasoning in Plaintiff's ability to speak and understand English—about which the Court is remanding for further factfinding—the Court does not find this example to be substantial evidence supporting the ALJ's reasoning.
[73] *Id.*
[74] *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis added).
[75] *See generally* SSR 18–3.

treatment, and cannot be used to discredit the claimant.[76] Here, the ALJ discredited Plaintiff "[m]ore significantly" due to her failure to "undergo the *recommended* carpal tunnel surgery and injections."[77] This was not a proper reason for discounting Plaintiff's testimony because the surgery was recommended to Plaintiff, not prescribed.[78]

**Third,** the ALJ improperly discredited Plaintiff's testimony because she had chronic hand pain for 8 to 10 years but worked as a janitor during this time.[79] The ALJ further discredited her testimony because her injury was found to be "unlikely work-related" in a previous L&I claim.[80] These reasons are not inconsistent with Plaintiff's subjective complaint testimony. An individual may experience pain while continuing to work but later be found disabled. Further, a determination that the injury is not work-related does not have bearing on whether she is disabled for Social Security purposes. Thus, the Court cannot find these reasons to be "specific, clear, and convincing."[81]

**Finally,** the ALJ improperly reasoned that the timeline of events shows Plaintiff stopped working "due to relocation, a reason other than her physical or

---

[76] *See, e.g.*, *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) ("At most, the record supports a finding that surgery was recommended, but not prescribed. Recommendations, suggestions, and abstract opinions are not enough."); *Young v. Califano*, 633 F.2d 469, 472–73 (6th Cir. 1980) (failure to follow a "suggested" and recommended surgery did not constitute a "willful failure to follow prescribed treatment").
[77] AR 23 (emphasis added). The Court further notes that Plaintiff obtained an injection the day it was recommended, despite her hesitancy. AR 748.
[78] *See, e.g.*, AR 749 ("I would recommend that you schedule with the orthopedic surgeon for consideration of surgery."); 754–55 (if Plaintiff tested positive in additional testing, her orthopedic surgeon said that she "then can consider surgery").
[79] AR 23.
[80] *Id.*
[81] *Ghanim*, 763 F.3d at 1163 (internal quotations and citation omitted).

mental impairments."[82] The ALJ stated Plaintiff "left her job shortly before her divorce was final because she wanted to move out of the Seattle area," and that Plaintiff moved to Tri Cities because she had family here.[83] The ALJ misstates the record. Plaintiff correctly points out that in March 2013, Plaintiff was 49 years old and still working as a custodian.[84] At that time, records show she was divorced and doing "lots of dating."[85] She had continued to work in April and May 2013,[86] and she only discussed moving to Tri Cities at the end of June 2013, long after she had been divorced.[87] This is inconsistent with the ALJ's statement of the facts, therefore substantial evidence does not exist to support the ALJ's reasoning.[88]

An ALJ's misstatement of facts about a claimant may be harmless error where the Court can conclude from the record that the ALJ would have reached the same result absent the error.[89] However, the ALJ partially relied on this misstatement to determine Plaintiff's credibility. Further, the Court finds the ALJ presented no other appropriate reasons to discount Plaintiff's testimony apart from its conflicts with

---

[82] AR 23.
[83] *Id.*
[84] AR 720
[85] *Id.*
[86] *See, e.g.*, AR 739; 748.
[87] AR 770.
[88] AR 23. The Court acknowledges that the following exchange took place in the administrative law hearing:

ALJ: "Did the divorce have anything to do with your decision to move to – move out of the Seattle area and leave your job?"
…
CLMT: "Yes, we were not getting along at the time. I was working at the university and he was working somewhere else, and we weren't getting along and I wanted out of the area."

AR 65. However, the Court does not find that this testimony alone provides substantial evidence to support the ALJ's reasoning when the timeline of events the ALJ presented is inaccurate.
[89] *Molina*, 674 F.3d at 1115.

medical evidence (see *infra*). Accordingly, the Court cannot find the ALJ would have reached the same result absent this error. The error was therefore harmful.

### 2) The conflict between Plaintiff's testimony and the objective medical evidence cannot be the sole reason for discrediting the testimony.

The ALJ cited several specific reasons why Plaintiff's allegations conflicted with the objective medical evidence, including dozens of examples in the medical records of Plaintiff's normal mental health appearance and physical functioning.[90] An ALJ may reasonably discount a claimant's allegations if they "do not comport with objective evidence in her medical record."[91] However, the ALJ may not solely discredit a Plaintiff's testimony because it conflicts with objective medical evidence[92]—thus, the ALJ must give other specific, clear, and convincing reasons supported by substantial evidence. As outlined above, the Court finds flaws in the ALJ's remaining reasons for discrediting Plaintiff's testimony, and the ALJ cannot discredit Plaintiff for conflicting with medical evidence alone. Thus, the Court remands this issue for further factfinding and development of the record regarding Plaintiff's credibility.

### 3) Remand is warranted for further factfinding regarding Plaintiff's credibility and, relatedly, the opinions of all treating and nontreating medical care providers.

Because the ALJ partially discounted the opinions of Dr. Hipolito due to Plaintiff's credibility,[93] the ALJ is directed to reweigh the opinions of Dr. Hipolito

---

[90] AR 21–22. The Court commends the ALJ for her clear organization of this portion of her Opinion.
[91] *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).,
[92] *Rollins v. Massanari*, 261 F.3d 85, 857 (9th Cir. 2001).
[93] AR 24.

upon remand. The Court therefore declines to address Plaintiff's assignments of error regarding the opinions of Dr. Hipolito.

The Court further directs the ALJ to review her findings regarding the opinions of Plaintiff's remaining treating and nontreating medical sources, including Dr. Virji. Because a medical opinion may be based partially on the claimant's self-reported symptoms,[94] the claimant's credibility may be an important factor in the ALJ's evaluation of the opinion. Thus, the Court declines to address Plaintiff's arguments regarding the opinion of Dr. Virji.

**C.     The ALJ properly discounted the opinion of Valene Rives, LMHCA.**

Plaintiff argues the ALJ improperly discounted the "other source" testimony from Valene Rives, LMHCA.[95] A licensed mental health counselor is not an acceptable medical source.[96] She is therefore considered an "other" source or "lay witness."[97] An ALJ need only give "germane" reasons for rejecting an opinion from a lay witness.[98] The ALJ may also reject a lay witness opinion that contains an internal conflict,[99] and may permissibly reject "check-off reports that [do] not contain any explanation of the bases of their conclusions."[100]

---

[94] *See Ghanim*, 763 F.3d at 1162.
[95] ECF No. 12 at 16–17.
[96] 20 C.F.R. §§ 404.1502(a); 404.1513(a).
[97] *See, e.g., Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (a licensed mental health counselor is not an "acceptable medical source").
[98] *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010).
[99] *See Molina*, 674 F.3d at 1112.
[100] *Id.* at 1111 (internal quotations and citations omitted). Plaintiff cites cases wherein the Courts have found harmful an ALJ's rejection of an opinion due to its check-box form. *See* ECF No. 12 at 17. However, these cases are distinguishable from the present case because they considered the opinions of treating physicians or primary medical care providers who are generally afforded great deference, not other sources such as Ms. Rives. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 n. 4 (9th Cir. 2017) ("[T]he ALJ was not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided

1       The ALJ presented germane reasons for affording very limited weight to Ms. Rives' testimony. First, the ALJ rejected her testimony because it was in the form of a check-box,[101] which is a germane reason because the opinion was not supported by explanations for the check-box conclusions.[102] The ALJ also stated the mental limitations Ms. Rives opined were "extreme and not supported by longitudinal records."[103] Additionally, the ALJ found that Ms. Rives' testimony that Plaintiff has "marked" limitations on her ability to navigate to and remember locations "conflicts with [Plaintiff's] actual abilities and activities," including her ability to drive her car and navigate successfully.[104] The ALJ also stated that Ms. Rives' opinion conflicted internally by opining that Plaintiff had "marked" impairment to understand even "very short and simple instructions," yet also opined that she had only "mild" limitations on her ability to "carry out very short and simple instructions."[105] These inconsistencies are appropriate and germane reasons,[106] therefore the ALJ did not improperly reject Ms. Rives' testimony.

---

on a 'check-the-box' form . . . indeed; agency physicians routinely use [check-the-box] forms to assess the intensity, persistence, or limiting effects of impairments."); *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (wherein the opinion was by a person who holds a Ph.D. in nursing and was a primary care medical provider, an ALJ improperly discounted the check-box form "under these circumstances"). *See also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (rejecting check-off psychological evaluations permissible where the opinions "did not contain any explanation of the bases of their conclusions"). There is no evidence that, as a counselor, Ms. Rives was a primary medical care provider for Plaintiff, and she is certainly not a treating physician to be afforded great deference. Moreover, the Court notes that Ms. Rives states in her opinion that Plaintiff was being treated by a treatment team containing "at least one MD or PhD," but that her stated opinions in the check boxes did not reflect the opinions of the treatment team. AR 487.

[101] AR 24.
[102] AR 485–87; *see also Molina*, 674 F.3d at 1111.
[103] AR 24.
[104] *Id.*
[105] *Id.*; AR 485.
[106] *Molina*, 674 F.3d at 1112; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

## IV. Conclusion

For the reasons discussed above, the Court reverses the ALJ's decision and remands for the ALJ to (1) conduct further factfinding regarding Plaintiff's literacy and education; (2) conduct further factfinding regarding Plaintiff's credibility and subjective complaints; and (3) reconsider the opinions of treating and nontreating physicians in light of the ALJ's determinations of Plaintiff's credibility. The ALJ should conduct any additional proceedings, including further development of the record, as she sees fit.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED IN PART.**
2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED IN PART.**
3. This case is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Order.
4. **JUDGMENT** is to be entered in the Plaintiff's favor.
5. The case shall be **CLOSED**.

/

/

/

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  2nd   day of May 2019.

       s/Edward F. Shea
       EDWARD F. SHEA
     Senior United States District Judge